# IN THE COURT OF APPEALS OF IOWA

No. 14-1501
Filed November 13, 2014

IN THE INTEREST OF C.W. and C.W.,
Minor Children,

S.C., Mother,
     Appellant.

_____

Appeal from the Iowa District Court for Polk County, Rachael E. Seymour, District Associate Judge.

A mother appeals from the order terminating her parental rights. **AFFIRMED.**

Thomas Crabb, Des Moines, for appellant mother.

Thomas J. Miller, Attorney General, Kathrine Miller-Todd, Assistant Attorney General, John P. Sarcone, County Attorney, and Christina Gonzalez, Assistant County Attorney, for appellee State.

Erin Mayfield of the Youth Law Center, Des Moines, for minor children.

Considered by Danilson, C.J., and Doyle and Tabor, JJ.

**DANILSON, C.J.**

A mother appeals the termination of her parental rights, contending the State did not prove the circumstances that led to the children's adjudication as children in need of assistance continue to exist, termination is not in the children's best interests, and the closeness of the parent/child bond should weigh against termination. She also challenges the court's statement of the children's custody and placement in the termination order. We affirm.

**I. Scope and Standard of Review.**

We review proceedings terminating parental rights de novo. *In re A.M.*, 843 N.W.2d 100, 110 (Iowa 2014); *In re D.W.*, 791 N.W.2d 703, 706 (Iowa 2010). We give weight to the findings of the trial court, especially in assessing the credibility of witnesses, though we are not bound by them. *A.M.*, 843 N.W.2d at 110.

**II. Background Facts.**

Ca.W. (born in August 2010) and Co.W. (born in March 2012) were removed from the mother's and father's[1] care and custody on October 18, 2012, because the parents were dealing marijuana out of their home and were using synthetic marijuana. It was later learned the mother was using methamphetamine as well. The children were adjudicated children in need of assistance (CINA) on December 3, 2012. Services were provided to address the

---

[1] The father's parental rights were terminated in an earlier proceeding and his rights are not at issue in this appeal.

mother's substance abuse and domestic violence issues.[2]  On August 28, 2013, the children were returned to their mother's custody, but were removed again on January 24, 2014, due to her failure to follow the safety plan in place, which placed the children at risk of injury.[3]

On February 6, 2014, a hearing was held on the State's motion to terminate, modify, or substitute disposition.  On February 13, the juvenile court entered an order modifying disposition.  The court found the mother had a history of lying to the court and workers, had maintained physical contact with and emotional attachment to the abusive father, and was untruthful with police about ongoing contact with the father despite a no contact order, which placed the children at risk when the father physically assaulted the mother.  The court concluded, "Placement outside the parental home is necessary because a return to the home would be contrary to the children's welfare due to Mother's failure to protect the children from biological father who has a history of serious domestic violence and substance abuse issues."

A petition to terminate the mother's parental rights was filed on February 14, 2014.  Hearings on the petition were held on April 18, May 16, and June 9. On August 30, 2014, the juvenile court terminated the mother's parental rights pursuant to Iowa Code section 232.116(1)(d) (2013).  That section authorizes the court to terminate parental rights if:

---

[2] The mother initially denied the father was abusive, though she did eventually acknowledge domestic violence as an issue.  She minimized the effects of domestic violence.

[3] The mother continued to see the father despite a no-contact order.  In December 2013, the father broke down her front door, and the father assaulted the mother, who was holding one of the children.

> (1) The court has previously adjudicated the child to be a child in need of assistance after finding the child to have been physically or sexually abused or neglected as the result of the acts or omissions of one or both parents, or the court has previously adjudicated a child who is a member of the same family to be a child in need of assistance after such a finding.
>
> (2) Subsequent to the child in need of assistance adjudication, the parents were offered or received services to correct the circumstance which led to the adjudication, and the circumstance continues to exist despite the offer or receipt of services.

Iowa Code § 232.116(1)(d). The court also found that termination was in the children's best interest and there were no legal exceptions that would argue against termination. The mother appeals.

**III. Discussion.**

The mother challenges the court's finding that the State proved the circumstances that led to the CINA adjudication continue to exist. She argues she has moved to a new apartment with a secured entrance (though her testimony was that she was not able to get into an apartment with secured access, but there are security cameras in the hall), she has now gained insight and knowledge by attending domestic abuse education classes, and she has maintained sobriety for nearly eighteen months.

The mother's claims are not borne out by the evidence presented at the multi-day trial. The mother admitted she used marijuana after the first day of the termination trial. She attempted to dilute her system to avoid detection in a drug screening. She has missed several drug screens, which are thus presumed "dirty," i.e., they would have been positive for illegal substances. The juvenile court made a specific finding that the mother started using "at least several weeks before the hearing" and she "continues to associate with others who use

illegal substances." The mother attended domestic violence awareness classes twice during the juvenile proceedings, the second time just prior to the termination trial. We agree with the juvenile court's finding that the mother's "newly gained insight and promises to implement the skills previously taught simply cannot be trusted." Despite more than eighteen months of services, including substance abuse treatment, domestic violence education, and psychological counseling, the mother continues to have unresolved substance abuse and domestic violence issues. *See In re C.B.*, 611 N.W.2d 489, 495 (Iowa 2000) (noting changes made it the "two or three months before the termination hearing, in light of the preceding eighteen months" were insufficient and "simply too late").

The children have been in numerous placements during the course of these proceedings, but were placed with a foster family at the time of the termination and have integrated into that home and are doing well.

In determining best interests, we "give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child." Iowa Code § 232.116(2); *accord In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010). We adopt the following findings of the juvenile court:

> The children's safety is a primary consideration. Unfortunately, the safety concerns that led to removal continue to exist today. The mother's lack of meaningful progress shows an inability or unwillingness to make necessary changes to have the children placed in their care. The child[ren]'s future can be gleaned from evidence of the parent's past performance and motivations. *In* [*re*] *T.B.*, 604 N.W. 2d 660, 662 (Iowa 2000).
>     Further, the children need a long-term commitment from a parent to be appropriately nurturing, supportive of their growth and

development, and who can meet their physical, mental, emotional and safety needs. Unfortunately, [the] mother has demonstrated she is [unable to] fulfill this parental role. It is not in these children's best interest to continue to suspend the crucial days of childhood while [the] mother experiments with ways to face up to her own problems. . . . The children are currently placed with a family that meets the criteria of a long-term, nurturing home and they should not have to wait any longer for a permanent home. Since, termination and adoption are the preferred methods of obtaining permanency for children who cannot be returned to a parental home, the court finds termination is in the children's best interest.

We acknowledge there is a bond between the mother and children, but we do not find that bond outweighs the children's need for permanency. *See* Iowa Code § 232.116(3)(c) (allowing the court not to terminate if "[t]here is clear and convincing evidence that the termination would be detrimental to the child at the time due to the closeness of the parent-child relationship").

We do not address the mother's final contention that the termination ruling improperly ordered the children's custody remain with DHS for "pre-adoptive foster care." The State had filed a motion in the juvenile court on this issue, but the mother appealed before the juvenile court could decide the matter. She did not seek a ruling by the juvenile court on the issue. *See In re A.B.*, 815 N.W.2d 764, 773 (Iowa 2012) (noting "the general rule that appellate arguments must first be raised in the trial court applies to CINA and termination of parental rights cases").

Because a statutory ground for termination exists and termination of the mother's parental rights will best provide for the children's need for permanency and long-term security, we affirm the termination of the mother's parental rights.

**AFFIRMED.**